THOMAS, J.:
Michael and Carmen Kellett (collectively, the Kelletts) appeal a trial court order finding they violated the South Carolina Unfair Trade Practices Act[1] (the Act). On appeal, the Kelletts argue the trial court erred in finding they violated the Act because the unfair or deceptive act at issue was not capable of repetition and therefore did not affect the public interest. In a cross-appeal, Natasha Turner argues the trial court properly found she prevailed under the Act but erred in finding she was not entitled to (1) attorney's fees, (2) punitive damages, and (3) costs. We reverse and remand.
*468 FACTS/PROCEDURAL HISTORY
In June 2014, Turner commenced the underlying suit against the Kelletts, alleging they owned and operated an auto repair business known as Buddy's Garage in Greenville. The complaint alleged Turner took her vehicle, a 2006 Mitsubishi Lancer, to Buddy's Garage for repairs and paid in advance for the services, but despite assurances from the Kelletts and their agents, the repairs were never completed and Turner was not refunded. Turner brought causes of action for conversion, fraud, misrepresentation, violation of the Act, and breach of contract. In November 2015, the case proceeded to a bench trial.
Turner testified she took her vehicle to Buddy's Garage in May 2013 because she was involved in a hit-and-run collision. Turner explained she dealt exclusively with Michael Finchem, the mechanic at Buddy's Garage. She stated Finchem gave her an estimate in the amount of $3,867.89 for repairs to the transmission, front bumper, and rear bumper. She paid $2,500 up front, and her automobile insurer tendered a check for $1,815.26 to cover the remainder.
Turner eventually picked up her vehicle from Buddy's Garage in July 2013. When she picked up the vehicle, she observed the front bumper was "not there" and the rear bumper had not been repaired. Carmen Kellett reimbursed her with a check for $130 for the front bumper only; Turner accepted the check but never deposited it. When Turner drove her vehicle out of Buddy's Garage, she noticed "noises coming from the engine." She took the vehicle to a second garage for further inspection and discovered the transmission had not been repaired or replaced. She attempted to call Buddy's Garage to discuss the transmission issues, but the phone number was disconnected.
Turner also testified about her boyfriend Matthew Smith's involvement with Buddy's Garage. She explained Smith took his vehicle, a Pontiac Grand Am, to Buddy's Garage because "he was having some problems with his tires." Smith could not afford the estimated repairs, "so he took the car home" several days later. Finchem reported the Pontiac as stolen; the report was later dismissed as unfounded.
Carmen Kellett testified she and her husband Michael jointly owned Buddy's Garage. Finchem, their sole employee, ran the day-to-day operations. She stated the repair cost for Turner's vehicle was $3,867.89, and she received two checks from Turner totaling approximately $4,315. She explained the $3,867.89 quote did not cover additional costs such as storage fees and a "paint kit." Sometime in July 2013, Carmen learned Finchem ordered parts for Smith's vehicle but did not install them. She believed Finchem was defrauding Buddy's Garage by using its operating accounts to buy parts but installing them for customers at his home for cash. Thereafter, Carmen fired Finchem, permanently closed down Buddy's Garage, and told Turner to pick up her vehicle.
On cross-examination, Carmen testified she did not regularly interact with customers and assumed Finchem kept Turner informed about the repairs to her vehicle. She admitted she received two checks from Turner and put them in Buddy's Garage's operating account, which Finchem did not have access to. She explained she refunded Turner $130 for labor costs because the front bumper was not installed. However, she did not refund Turner for the transmission, paint kit, or rear bumper.
The trial court found in favor of Turner on her claims of conversion, fraud, misrepresentation, and violation of the Act.[2] The trial court awarded Turner treble damages in the total amount of $10,567.86 but denied her requests for attorney's fees, costs, and punitive damages. These appeals followed.
THE KELLETTS' APPEAL
"A claim under the [Act] is an action at law." Jefferies v. Phillips , 316 S.C. 523, 527, 451 S.E.2d 21, 22 (Ct. App. 1994). "Therefore, this court will correct any error of law, but we must affirm the [trial court's] factual findings unless there is no evidence *469 that reasonably supports those findings." Id. at 527, 451 S.E.2d at 22-23.
The Act provides, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." S.C. Code Ann. § 39-5-20(a) (1985). "To recover in an action under the [Act], the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." Wright v. Craft , 372 S.C. 1, 23, 640 S.E.2d 486, 498 (Ct. App. 2006).
The Kelletts concede on appeal they committed an unfair trade practice within the scope of the Act by charging Turner for auto repairs that were never performed. Wogan v. Kunze , 366 S.C. 583, 606, 623 S.E.2d 107, 120 (Ct. App. 2005) ("An unfair trade practice has been defined as a practice which is offensive to public policy or which is immoral, unethical, or oppressive." (quoting deBondt v. Carlton Motorcars, Inc. , 342 S.C. 254, 269, 536 S.E.2d 399, 407 (Ct. App. 2000) ) ); Barnes v. Jones Chevrolet Co. , 292 S.C. 607, 613, 358 S.E.2d 156, 159 (Ct. App. 1987) (finding padding bills for auto repair is an unfair trade practice). Thus, we turn to the Act's public interest prong.
"To be actionable under the [Act], an unfair or deceptive act or practice must have an impact upon the public interest." Wright , 372 S.C. at 29, 640 S.E.2d at 501. "An unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is beyond the [A]ct's embrace ...." Noack Enters., Inc. v. Cty. Corner Interiors, Inc. , 290 S.C. 475, 479, 351 S.E.2d 347, 349-50 (Ct. App. 1986). "An impact on the public interest may be shown if the acts or practices have the potential for repetition." Singleton v. Stokes Motors, Inc. , 358 S.C. 369, 379, 595 S.E.2d 461, 466 (2004).
The potential for repetition may be demonstrated in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts.
Wright , 372 S.C. at 30, 640 S.E.2d at 502. "These two ways are not the only means for showing the potential for repetition or public impact, and each case must be evaluated on its own merits to determine what a plaintiff must show to satisfy the potential for repetition/public impact prong of the [Act]." Id. "Nevertheless, a plaintiff proves an adverse effect on public interests if he proves facts that demonstrate the potential for repetition." Id.
The Kelletts argue their unfair acts had no impact upon the public interest because they were incapable of repetition. Specifically, the Kelletts assert Turner presented no evidence showing similar conduct had occurred in the past, and Carmen fired Finchem and permanently closed Buddy's Garage after dealing with Turner, thereby precluding any future repetition. We agree.
No evidence in the record suggests the Kelletts had a history of unfair billing practices or procedures making it likely the unfair billing practices would continue. See id. at 30, 640 S.E.2d at 502 ("The potential for repetition may be demonstrated in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts."). The only evidence of previous deceitful acts concerned an alleged scheme between Finchem and Smith to defraud Buddy's Garage. As previously stated, Turner testified Smith took his vehicle to Buddy's Garage for repairs but later retrieved it because he could not afford the estimate. Carmen, however, believed Finchem and Smith plotted to order parts for Smith's car using funds from Buddy's Garage, falsely report the car as stolen, and then have Finchem install the parts at his home for cash. Although this testimony raises concern that Finchem was engaged in nefarious conduct, the alleged scheme sought to defraud the Kelletts rather than their customers. As such, it does not evidence a history of the same kind of unfair act-padding *470 auto repair bills-occurred in the past and was likely to continue in the future without deterrence. See id.
Moreover, Carmen fired Finchem in July 2013 based on her belief he was defrauding Buddy's Garage. Immediately thereafter, Carmen permanently closed Buddy's Garage and told Turner to pick up her vehicle; Turner was Buddy's Garage's final customer. As a result of these actions, there was no potential for either Finchem or the Kelletts to further engage in unfair business practices through Buddy's Garage. Id. (providing the potential for repetition may be demonstrated by showing the company's procedures create a potential for repetition of the unfair and deceptive acts).
Based on the foregoing, we find Turner failed to meet the public interest prong of the Act. Noack Enters. , 290 S.C. at 479, 351 S.E.2d at 349-50 ("An unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is beyond the [A]ct's embrace ...."). Accordingly, we reverse the trial court's findings under the Act.
TURNER'S CROSS-APPEAL
Turner argues the trial court erred in failing to award her attorney's fees, which she requested in her complaint and the Act specifically provides. See § 39-5-140(a) ("Upon the finding by the court of a violation of [the Act], the court shall award to the person bringing such action under this section reasonable attorney's fees and costs."). Because we reverse the trial court's findings on the Act, we decline to address this issue. See Futch v. McAllister Towing of Georgetown, Inc. , 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when the disposition of a prior issue is dispositive).
Turner also argues the trial court erred in denying her punitive damages and costs. The trial court's order found in favor of Turner on the issues of conversion, fraud, and misrepresentation. The Kelletts do not contest these findings, making them the law of the case. See Buckner v. Preferred Mut. Ins. Co. , 255 S.C. 159, 160-61, 177 S.E.2d 544, 544 (1970) (holding an unappealed ruling, right or wrong, is the law of the case). The trial court did not, however, rule on the breach of contract claim. The Kelletts now concede the evidence at trial showed they breached a contract with Turner and assert she is entitled to limited damages under a breach of contract theory. Because the trial court did not rule on the breach of contract claim and neither party filed a Rule 59(e), SCRCP, motion seeking a final judgment on the issue, it is not preserved for appellate review. See I'On, LLC v. Town of Mt. Pleasant , 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) (holding where an issue is raised to but not ruled on by the trial court, the party must file a motion to alter or amend the judgment to preserve the issue for appellate review).
"Punitive damages are recoverable in conversion cases if the defendant's acts have been willful, reckless, and/or committed with conscious indifference to the rights of others." Mackela v. Bentley , 365 S.C. 44, 49, 614 S.E.2d 648, 651 (Ct. App. 2005). Punitive damages are similarly recoverable in fraud cases. Harold Tyner Dev. Builders, Inc. v. Firstmark Dev. Corp. , 311 S.C. 447, 453, 429 S.E.2d 819, 823 (Ct. App. 1993) ; Elders v. Parker , 286 S.C. 228, 234-35, 332 S.E.2d 563, 567 (Ct. App. 1985) (holding even though the jury returned a general verdict in an action for breach of contract and fraud, the plaintiff was held entitled to punitive damages where the evidence supported a finding of fraud). In its discretion considering punitive damages, the trial court must consider the following factors:
(1) defendant's degree of culpability; (2) duration of the conduct; (3) defendant's awareness or concealment; (4) the existence of similar past conduct; (5) likelihood the award will deter the defendant or others from like conduct; (6) whether the award is reasonably related to the harm likely to result from such conduct; (7) defendant's ability to pay; and finally, (8) ... "other factors" deemed appropriate.
Gamble v. Stevenson , 305 S.C. 104, 111-12, 406 S.E.2d 350, 354 (1991).
The trial court denied Turner's request for punitive damages and indicated it would not award both punitive and treble damages; however, the trial court did not *471 address any of the eight Gamble factors. The Kelletts do not contest the trial court's findings of fraud, conversion, and misrepresentation, for which punitive damages are allowable. See Mackela , 365 S.C. at 49, 614 S.E.2d at 651 ; Harold Tyner Dev. Builders , 311 S.C. at 453, 429 S.E.2d at 823. We remand each of these causes of action to the trial court to make appropriate findings as to the proper measure of damages. We further instruct the trial court to award Turner her costs as the prevailing party. See § 15-37-10 (2005) ("In every civil action commenced or prosecuted in the courts of record in this State, except cases in chancery, the attorneys for the plaintiff or defendant shall be entitled to recover costs and disbursements of the adverse party ....").
Accordingly, the decision of the trial court is
REVERSED AND REMANDED.
LOCKEMY, C.J., and GEATHERS, J., concur.

S.C. Code Ann. §§ 39-5-10 through -180 (1985 & Supp. 2018).

The record is unclear as to why the trial court did not rule on Turner's breach of contract claim.