12688

CROSS, AS TRUSTEE, v. SOUTHERN COAL & COKE CO.

(149 S. E., 14)

310

*Messrs. Melton & Belser,* and *Frierson & McCants,* for appellant,

*Mr. R. B. Herbert,* for respondent,

June 26, 1929.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

H. W. Powell, doing business under the name of Powell Fuel Company,. on the petition of certain of his creditors, was duly adjudged a bankrupt by the United States District Court for the Eastern District of South Carolina. T. C.

Cross was appointed trustee of the bankrupt estate, and, as such, is the plaintiff-appellant in this action.

The suit is brought under the provisions of the Bankruptcy Law (11 USCA). The complaint alleged that within four months prior to the date of the filing of the petition in bankruptcy, and while insolvent and indebted to the defendant-respondent and other creditors of the same class, the said H. W. Powell, doing business as Powell Fuel Company, on or about March 24, 1924, made a transfer of a portion of his property by paying to the defendant the sum of $10,131.66, to be applied, and which was received by the defendant and applied, on account of the indebtedness of the said Powell, represented by two promissory notes, aggregating the sum of $15,983.61; that the payment so made operated as, and created, a preference in favor of the defendant against the other creditors of the said bankrupt in violation of the bankruptcy laws; and that at the time of such payment the defendant knew, or had reasonable cause to believe, that the said Powell was insolvent, and that such payment would effect a preference, and that it was receiving a preference in violation of the provisions of the bankruptcy laws. Plaintiff demanded judgment for the amount of the alleged unlawful preference money.

The defendant, in its answer, admitted the adjudication of Powell as a bankrupt, but denied all the other material allegations of the complaint.

The trial of the cause was heard in the Court of Common Pleas of Richland County before his Honor, Circuit Judge C. C. Featherstone, and a jury. The verdict was in favor of the defendant, and the plaintiff has appealed to this Court.

Plaintiff has also appealed from the order of the Circuit Judge settling the case for appeal.

In the main appeal, there are 22 exceptions, and the last of these has 6 subdivisions. We shall endeavor to group

the exceptions as much as possible for the purpose of saving time and space.

The trial of the case was commenced on Thursday, February 6, 1925, at 9:30 a. m. In the course of the afternoon session, the trial Judge announced that because of a fire on his premises in Greenwood, he desired to get to his home on the following day, and he would require that all the testimony and arguments be concluded on Thursday. The afternoon session was continued until 7 o'clock p. m., the trial was resumed at 8 p. m., and the testimony was concluded about 10 p. m. At the conclusion of the testimony, motions by both sides for the direction of a verdict were made and argued, which motions were refused. After arguments by counsel and charge of the Judge, the jury considered the case that night, and shortly after midnight returned their verdict. There was no objection on the part of any attorney to the course pursued by the presiding Judge. By his twenty-first exception, the plaintiff complains that the manner in which the case was conducted prevented the plaintiff from properly developing his case, and was a hardship on all parties concerned, and says there should be a reversal because of the hurried manner in which the case was tried and disposed of. It seems that it took from soon after 9:30 a. m. to 7 p. m. for the plaintiff to complete his testimony, while the defendant did not use near so much time. The cross examination of the few witnesses offered by the defendant was very extended.

If the plaintiff did not wish the trial of the case hurried, it was his duty to so announce to the Court. It is too late for him to complain now. A party cannot take chances of that kind and thereafter, when he has lost his suit, make just complaint.

Exception No. 20 and the sixth subdivision of exception No. 22 relate to the failure to direct a verdict in favor of the plaintiff. Subdivision 5 of exception 22 refers to denial of plaintiff's motion for a new trial.

These exceptions take the position that it was inclusively established that Powell was insolvent at the time the payment was made, and that the defendant had reasonable cause to believe that he was insolvent, and that the effect was a preference in favor of the defendant. We do not deem it necessary to review all the evidence. If there was any evidence on the disputed issues to disprove the contentions of the plaintiff, or to establish the contentions of the defendant, it was clearly the duty of the Court to submit the case to the jury. Without referring to the testimony of any other witness, it is only necessary to point out that Mr. E. C. Mahan, president of the defendant company, who handled the transaction for his company in which the payment was made by Powell and received by the defendant, testified positively that he did not know Powell's insolvency, that he did not intend to get any preference, that he had no knowledge or information of any kind to cause him to believe that Powell was insolvent, or that his firm was obtaining any preference; and Mr. Mahan offered for his company to rescind the whole transaction between Powell and himself if the trustee in bankruptcy and other creditors would place his company where it was when his transaction with Powell, questioned in this action, took place.

While H. N. Edmunds, Esq., the Referee in bankruptcy, was a witness for the plaintiff, plaintiff's counsel attempted to bring out from the witness a statement of the lawsuits, in the nature of contingent assets, brought by the trustee in bankruptcy to recover property alleged by the trustee to properly belong to the bankrupt's estate. Plaintiff contended that the evidence was competent to bring out the fact that the bankrupt had been making alleged preferential payments and transfers about the same time of the payment to the defendant. The defendant objected to this testimony. In the course of a colloquy between the presiding Judge and one of the attorneys for the plaintiff, the Judge ruled that the proffered testimony would be

competent if the plaintiff could bring "this knowledge home" of the other alleged preferential payments to the defendant. Plaintiff's attorney remarked, "We don't have to bring it home to him (defendant)." The Judge said: "I rule you do. You can't affect this man with fraudulent schemes, unless you can bring it home to him." After considerable argument on the part of the plaintiff's counsel, the Court further ruled that he would let the evidence "come in for the present." The first exception complains that the remark of the Judge as to "fraudulent schemes" was highly prejudicial to the plaintiff's case. We are unable to agree with the appellant. Perhaps the Judge did become a little irritated at the persistence of counsel, but we cannot see how the remark was prejudicial to the plaintiff. If the president of the defendant company, who was acting for his company, had no knowledge of "fraudulent schemes" on the part of Powell and other creditors of Powell, the defendant, of course, could not be held responsible in any way for such schemes, and the Circuit Judge was correct in the statement he made.

Exceptions 2 and 3 charge that the Circuit Judge refused to allow the plaintiff to introduce through Referee Edmunds a statement of the list of contingent assets of the bankrupt estate, consisting of lawsuits growing out of alleged illegal transfers and other misdoings of the bankrupt; and testimony on the part of Mr. Edmunds as to the nature and circumstances of the claims and lawsuits instituted by the trustee of the bankrupt. We are inclined to think that these exceptions are taken under a misapprehension of what really occurred in the trial. The record discloses that Mr. Edmunds mentioned quite a number of lawsuits instituted by the trustee and told of the results of the litigation. The trial Judge announced that it was competent for the witness to give his opinion as to what he thought would be realized from lawsuits then pending. The request of the counsel for the plaintiff to allow the introduc-

tion of a memorandum made up by a Mr. Gooding, an accountant, was, it seems, not allowed; but Mr. Edmunds testified to all the figures shown on this statement, and the jury had the full benefit of this information. The Judge stated that in view of the fact that all these matters had gone into the record, he did not see any use in putting the paper in. We cannot find any prejudicial error in this regard as complained of by the appellant.

In the examination of Mr. Edmunds, plaintiff inquired of him as to the testimony of Mr. H. W. Powell in another case regarding the transfer by Powell of certain assets of Powell Paving & Contracting Company, a corporation in which H. W. Powell was also interested, to a paving concern in North Carolina, in which Powell also had an interest. The Court would not allow this examination, and in his fourth exception appellant alleges that the action of the Court was error. Clearly the Court was right in its rulings on this matter. Powell was not a party to the case at bar. Testimony as to what he had testified formerly in some other suit, to which the defendant here was not a party, was incompetent.

The plaintiff sought also to prove by Mr. Edmunds that it had been necessary to institute more proceedings to recover property illegally or fraudulently transferred by Powell than the witness had known of in any other bankruptcy case in his long experience as Referee, and it is urged in the fifth exception that the Court erred in not allowing testimony along this line. The Circuit Judge was right in sustaining the objection to the questions which endeavored to bring out this testimony.

J. E. Mardre, manager of Dun & Co., in the City of Columbia, was a witness for the plaintiff. He testified as to a statement made on February 12, 1924, by Powell Fuel Company as of January 1, 1924, to his mercantile agency. The witness said that he had no inquiry about March 24, 1929, from the defendant as to the condition of

Powell Fuel Company. He was not allowed to testify what would have been his reply as to this financial condition if inquiry had been made. The alleged unlawful preference was made on March 24, 1924. The Court would not allow the question answered, on the ground that what information Mr. Mardre would have given at a time later than March 24th would have been conjecture, and we think the ruling was correct. The sixth exception raising this question is overruled.

Exceptions 7, 8 and 9 are argued together by the appellant. These, as well as exception 10 and subdivision 1 of the twenty-second exception, may be disposed of together. They all relate to testimony which the appellant sought to bring out from his witness, Mr. W. F. Coleman, who, for a long time preceding the bankruptcy, was the bookkeeper and cashier of Powell Fuel Company. Appellant desired to show by Mr. Coleman that H. W. Powell had offered the heirs of his father, J. W. Powell, a certain sum of money if these heirs would relieve H. W. Powell of any and all liability in connection with Powell Fuel Company; that a certain check, drawn by Powell Fuel Company, payable to Southern Coal & Coke Company, could not be paid because of insufficient funds in the bank on which it was drawn; that Powell discussed with Coleman plans for letting Coleman continue the business after the arrangement of a composition with the creditors; and that Powell had taken from the treasury of the company, between the time of the filing of the petition in bankruptcy and the adjudication in bankruptcy, a considerable amount of cash. The trial Judge had indicated previously that he did not think testimony as to transactions of the natures mentioned were competent, unless some testimony could also be produced to show that the defendant had knowledge or information, either directly or circumstantially, of what had occurred. The counsel for the appellant stated during one of these colloquies: "Yes, sir; perhaps your Honor has the same

view I have, expressed in different language." In the examination of Mr. Coleman, the Circuit Judge stated that he wished to keep out irrelevant matters and asked counsel to confine his examination to show that Powell was insolvent without going into numerous details and bringing in extraneous matters. The examination of Mr. Coleman was very full, and his testimony was positive as to the insolvency of Powell for some time preceding the filing of the petition in bankruptcy. In our opinion, the Circuit Judge allowed counsel for the plaintiff a great deal of latitude in his examination of the witness. We are unable to find any error, and certainly none sufficient to justify a reversal of the cause as to the matters complained of in the exceptions under consideration.

Exceptions 11, 12, and 13 relate to the examination of Mr. Mahan, president of the defendant company. Mr. Mahan testified that there was nothing unusual in the letters written by the defendant to Powell Fuel Company asking and insisting upon payment of the debt of the fuel company to the defendant. Appellant takes the position that these letters were in evidence and spoke for themselves, and that the testimony of the witness was merely a self-serving opinion. Likewise, it is contended that the testimony of Mahan that he did not think he was getting any preference, but was simply doing an act of helpfulness in a bad financial situation, was a self-serving statement, and it is urged that Mahan's testimony that he thought Powell had a good business was hearsay. We think all the testimony objected to, and which constitutes the basis of the exceptions mentioned, was entirely competent. The witness had the right to explain fully his reasons for his transactions with Powell when his company received the alleged unlawful preference.

In the course of the testimony of Mr. Mahan, he stated that his company was perfectly willing to undo his transaction with Powell, if the other credtiors of

Powell and the trustee in bankruptcy would place his company exactly where it was prior to the transactions in question. Counsel for the defendant stated in open Court that if the plaintiff would accept this offer, the case could be ended immediately. The attorney for the plaintiff was explaining the position of the plaintiff and the creditors as to the refusal to accept the offer made. The Judge asked of plaintiff's counsel: "Will you accept it, if so, we will end this case right now?" Plaintiff's counsel continued with his explanation, and once or twice was interrupted by the Court by questions and remarks. By his fourteenth exception, the plaintiff alleges that the Judge erred in interrupting his counsel in his effort to explain why the plaintiff could not accept the alleged offer of settlement, and it is contended that the Court's action in refusing to allow full explanation was highly prejudicial to the plaintiff's case. By the second subdivision of exception 22, complaint is made that the Court should have granted a new trial because the defendant in an improper and illegal manner brought out the fact that it had made a specious offer of compromise. A reading of the record shows that it was not very clear what the plaintiff was willing to do as to the offer made by Mr. Mahan. Evidently, Judge Featherstone thought he saw an opportunity to end the litigation. It was not improper for him, in the interest of all the parties, to use his efforts in that direction, if, in doing so, he did not place either of the parties in an unfair position. It is clear to us that the Judge by his interruptions was simply seeking for necessary information to show clearly what the offer of settlement was and why it could not be accepted by the plaintiff. It seems to us also that Mr. Mahan had the right to show that his transactions with Powell had been in good faith, and that he had no desire to take advantage of other creditors of the same class as his company by bringing out the fact that he had offered to restore to the bankrupt estate all property and money received by him and his company, if the bankrupt estate would

place him and his company where they had been originally. We are unable to find any harmful error in what occurred.

In his charge to the jury, the trial Judge stated that it was disputed "whether or not the Powell Fuel Company was insolvent at the time it received the payment. That fact was disputed." In the fifteenth exception, appellant complains that this statement was improper and incorrect, he contending that there was no dispute whatever about the fact that at the time of the alleged preference the Powell Fuel Company was hopelessly insolvent, and that there was not a scintilla of testimony offered by the defendant to show to the contrary. We think that when the Judge made the statement referred to, he was referring to the pleadings in the cause. The plaintiff had alleged, and the defendant had denied, the insolvency of Powell at the time of the alleged preference. However, if the Judge had in mind the evidence in the case and not the pleadings, he was still correct in his statement that there was a dispute according to the evidence as to the insolvency of Powell at the time of the alleged preference. Powell himself testified that he did not believe he was insolvent at that time, and thought that if he could have continued the business, he could have worked out of his financial difficulties. The plaintiff himself offered in evidence the statement made by Powell to Dun & Co., showing assets largely in excess of the liabilities of Powell Fuel Company. This statement alone was sufficient to require that the case be submitted to the jury on the question of the insolvency of Powell at the time of the alleged preference.

The sixteenth and seventeenth exceptions, and subdivisions 3 and 4 of the twenty-second exception, relate to the refusal of the presiding Judge to charge certain requests of the plaintiff. These requests of the plaintiff (Nos. 10 and 12) will be reported. We think the requests were couched in such language that the Judge could not grant them, because they were clearly on the facts of

the case, and they would have indicated very plainly to the jury the Judge's view of the effect of the testimony. There was no error in refusing the instructions asked for.

The eighteenth and nineteenth exceptions impute error to the Circuit Judge in charging the fifth and seventh requests of the defendant, which will be reported. In their argument, counsel for the appellant do not question the correctness of the propositions of law contained in the requests under consideration. The argument is that the instructions were misleading, as they suggested issues not made by the evidence. The position is taken that the requests were not pertinent to any issue in the cause, and therefore the giving of them constituted reversible error. The instructions were given hypothetically, and were in response to the evidence on behalf of the defendant that the transaction between Powell on the one hand, and the defendant and its president on the other hand, were altogether "fair and equitable," and that the result was not to "reduce the assets" of Powell. Reading the requested instructions in connection with the whole charge of the Circuit Judge, as we are bound to do, it is clear to us that the jury was not misled, as suggested by the appellant.

At the instance of the respondent, the trial Judge required that the case for appeal set forth considerable testimony, which the appellant did not think it was necessary to be included as he has appealed from the order made in that respect. Since the appellant questioned the correctness of the ruling of the Circuit Judge in his refusal to grant appellant's motion for a directed verdict, we think it was best that this Court have all the testimony before it, and we approve the order made.

It is the judgment of this Court that all the exceptions made by the appellant be, and the same are hereby, overruled, and the judgment of the Court of Common Pleas for Richland County be, and the same is hereby, affirmed.

MESSRS. JUSTICES COTHRAN, STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE GRAYDON concur.

MR. CHIEF JUSTICE WATTS did not participate.