616 S.E.2d 425

**George KOUTSOGIANNIS, Respondent,**

v.

**BB & T f/k/a United Carolina Bank, Appellant.**

No. 26010.

Supreme Court of South Carolina.

Heard June 1, 2005.

Decided July 11, 2005.

146

Charles M. Groves, of Chapman, Harter & Groves, P.A., of Greenville, for appellant.

Robert C. Wilson, Jr., of Greenville, for respondent.

Justice MOORE:

Following a jury's finding that appellant (BB & T) was grossly negligent in its conduct regarding an automobile loan, BB & T appealed on the basis the trial court erred by failing to give a requested instruction to the jury. We certified this matter from the Court of Appeals pursuant to Rule 204(b), SCACR. We affirm.

## ISSUE

Did the trial court err by refusing to charge the jury the law of independent contractor?

## FACTS

In July 1996, respondent financed the purchase of a car with a loan from United Carolina Bank, which subsequently merged into BB & T. In May 1999, respondent made a full cash payment for the month; however, the payment was improperly entered as a partial payment. BB & T claimed respondent owed the bank $23.76. Based on BB & T's own error, BB & T began collection efforts against respondent. Respondent continued to make regular payments, but then

ceased payments in October 1999, due to BB & T's collection efforts and its inability to give him a correct pay-off figure.

BB & T referred the collection matter to an outside attorney. In negotiations with BB & T's attorney (Attorney), respondent's attorney attempted to establish a correct pay-off figure and sought to have BB & T correct the error on his credit report. When the attorneys could not reach a final agreement, BB & T commenced an action against respondent.

Meanwhile, respondent entered into a real estate contract to purchase a parcel of land with commercial potential. The purchase price for the parcel was $122,000; however, it appraised at $210,000. Respondent lost the real estate deal due to BB & T's credit reporting error. After the real estate deal was lost, negotiations essentially ceased between the two attorneys and respondent filed counterclaims of libel, conversion, breach of contract accompanied by fraudulent intent, and gross negligence against BB & T. On behalf of BB & T, Attorney moved for summary judgment. The trial court granted summary judgment on both BB & T's claims and respondent's counterclaims in an order prepared by Attorney. The Court of Appeals reversed the court's order and stated respondent was never afforded an opportunity to argue the merits of his counterclaims. *BB & T f/k/a United Carolina Bank v. Koutsogiannis,* Op. No.2003–UP–175 (S.C. Ct.App. filed March 4, 2003). Thereafter, respondent paid off the car loan and a jury trial was conducted on the counterclaims.

At trial, respondent sought to recover damages from BB & T based on BB & T's misconduct in handling the loan matter and vicarious liability for Attorney's misconduct in attempting to collect the debt and preparing the draft order for summary judgment. As to Attorney, respondent asserted Attorney engaged in dilatory tactics which intentionally prolonged the unsuccessful settlement negotiations. With respect to the preparation of the summary judgment order, respondent asserted Attorney intentionally sought to deceive the trial court and injure respondent.

BB & T requested a charge on the law of independent contractor.[1] BB & T's theory was that even if Attorney's

---

1. The requested charge is as follows:

conduct could be considered wrongful, he was, nonetheless, an independent contractor for whose misconduct BB & T was not vicariously liable. The request for the charge was denied; however, the trial court gave a detailed and extensive charge on the law of agency to the jury. The court further charged that the "acts of an attorney are directly attributable and binding upon the client."

At trial, Attorney testified he was paid by BB & T on a case-by-case basis and that BB & T did not supervise him or instruct him as to how he should handle the case. Sonja Allen, a BB & T employee who Attorney was required to report to regarding respondent's case, testified Attorney was a private lawyer who was sent cases by BB & T on a case-by-case basis. Allen stated she did not supervise Attorney in the sense that he was instructed on what methods to use to collect the debt. Allen stated Attorney kept her informed of significant events in the case. She stated she was aware there had been a summary judgment hearing and that Attorney had submitted documents for her approval before and after the hearing. She stated she would have reviewed the proposed summary judgment order prepared by Attorney.

The jury returned a verdict in favor of respondent on the counterclaim of gross negligence and awarded respondent $98,000.[2] The jury found in favor of BB & T on the other counterclaims.

## DISCUSSION

BB & T argues that because a client may not be vicariously liable for the conduct of its attorney, the trial court erred by

---

The principal's or master's liability is derived from his or her relationship to the agent, or servant. A master is one who has the right to control the manner and method of work performed. A servant is one whose work is subject to the supervision or control of the master. By contrast, an independent contractor is a person hired for a particular purpose or project, who is compensated on a project-by-project basis, and who exercises his own discretion over the manner and method of carrying out the work.

**2.** It cannot be determined from the jury verdict whether the jury found in favor of respondent on the counterclaim of gross negligence due to BB & T's own negligence or due to Attorney's negligence.

failing to charge the jury on the law of independent contractor. We disagree.

The trial judge is required to charge the current and correct law. *McCourt v. Abernathy,* 318 S.C. 301, 457 S.E.2d 603 (1995). Where a request to charge is timely made and involves a controlling legal principle, a refusal by the trial judge to charge the request constitutes reversible error. *Eaddy v. Jackson Beauty Supply Co.,* 244 S.C. 256, 136 S.E.2d 297 (1964). To warrant reversal, the refusal to give a requested charge must have been erroneous and prejudicial. *Jones v. Ridgely Communications, Inc.,* 304 S.C. 452, 405 S.E.2d 402 (1991). In determining prejudice, a charge to the jury should be considered in its entirety. *Id.*

The proper focus here is whether Attorney was acting within the scope of his representation when he committed the alleged acts of gross negligence. In the attorney-client relationship, clients are generally bound by their attorneys' acts or omissions during the course of the legal representation that fall within the apparent scope of their attorneys' authority. *See, e.g., Shelton v. Bressant,* 312 S.C. 183, 439 S.E.2d 833 (1993) (client bound by attorney's actions in settlement of a case; acts of attorney are directly attributable to and binding upon client); *Shuler v. Crook,* 290 S.C. 538, 351 S.E.2d 862 (1986) (clients penalized because frequent change of counsel added to other parties' cost in defending the case; acts of attorney are directly attributable to and binding upon client). Attorney was an agent for BB & T because the work and acts he engaged in, such as the settlement negotiations and the submission of a proposed summary judgment order to the trial court, were within the scope of his representation. *Cf. BB & T of South Carolina v. Fleming,* 360 S.C. 341, 345, 601 S.E.2d 540, 542 (2004) (in another case, we held that because this specific attorney was BB & T's attorney of record, he was BB & T's agent). As a result, BB & T can be held liable for its agent's, Attorney's, actions taken within his scope of representation, including possible torts committed by him.[3] *See Rickborn v. Liberty Life Ins. Co.,* 321 S.C. 291, 468

---

3. We have previously held that an action may not be maintained against an attorney for actions taken in the attorney's professional capacity; however, an attorney is not immune for acts taken *outside* the scope of

S.E.2d 292 (1996) (doctrine of apparent authority provides principal bound by agents acts when principal has placed agent in such position that persons of ordinary prudence, reasonably knowledgeable with business usages and customs, are led to believe agent has certain authority and they in turn deal with agent based on that assumption). Therefore, the trial court did not err by failing to charge the law of independent contractor and charging only the law of agency.[4] *See Jones v. Ridgely Communications, Inc., supra* (refusal to give requested charge must have been erroneous and prejudicial).

## CONCLUSION

We find Attorney's engagement in settlement negotiations and in the preparation of the proposed summary judgment order is clearly within the scope of authority set out to him by BB & T. Any misconduct engaged in by Attorney during those actions is directly attributable to BB & T. *See Shuler v. Crook, supra* (acts of attorney are directly attributable to and binding

---

the professional relationship. *See Stiles v. Onorato*, 318 S.C. 297, 457 S.E.2d 601 (1995) (attorney may be held liable for conspiracy where, in addition to representing his client, he breaches some independent duty to third person or acts in own personal interest, outside scope of representation of client); *Douglass ex rel. Louthian v. Boyce*, 344 S.C. 5, 542 S.E.2d 715 (2001) (attorney immune from liability to third persons arising from attorney's professional activities on behalf and with knowledge of client, absent independent duty to third party).

4. This result is supported by other jurisdictions which have found clients to be vicariously liable for their attorney agents' wrongful acts committed within the scope of the attorneys' representation. *See Southwestern Bell Tel. Co. v. Wilson*, 768 S.W.2d 755 (Tex.App.1988) (creditor vicariously liable for alleged tortious collection efforts of its attorneys for its benefit; relationship between client and attorney was agency relationship); *Peterson v. Worthen Bank & Trust Co., N.A.*, 296 Ark. 201, 753 S.W.2d 278 (1988) (client could be held accountable for acts of attorney, who used successive garnishments to collect client's judgment, so long as attorney was acting within scope of employment, even though client may not have directed attorney or affirmatively acquiesced in attorney's conduct); *Hewes v. Wolfe*, 74 N.C.App. 610, 330 S.E.2d 16 (1985) (where attorney is guilty of oppressive or wrongful conduct during course of proceeding to enforce claim of principal, principal is liable for attorney's wrongful acts); *Nyer v. Carter*, 367 A.2d 1375 (Me.1977) (if tort committed by agent/attorney, then principal/client is liable if act was done within scope of attorney's employment, even though client did not specifically authorize the tortious conduct).

upon client). Accordingly, the trial court did not err by refusing to charge the jury the law of independent contractor. *See McCourt v. Abernathy, supra* (trial court is required to charge correct law); *Jones v. Ridgely Communications, Inc., supra* (refusal to give requested charge must have been erroneous and prejudicial to warrant reversal).

**AFFIRMED.**

TOAL, C.J., WALLER, BURNETT, J.J. and Acting Justice KENNETH G. GOODE, concur.